IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHAKIA M. TURNER for T.L.H.
TURNER,

                                  Plaintiff,                           OPINION AND ORDER

              v.                                                              12-cv-268-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                  Defendant.

---

In this *pro se* action brought pursuant to 42 U.S.C. § 405(g), plaintiff Shakia Turner, on behalf of her minor daughter, T.L.H. Turner, seeks judicial review of an adverse decision of the Commissioner of Social Security finding T.L.H. ineligible for Supplemental Security Income (SSI) benefits under Title XVI of the Act, codified at 42 U.S.C. §§ 1381(a) and 1382(a).   Having reviewed the record and the parties' submissions, the court is persuaded that substantial evidence supports the Commissioner's determination that T.L.H. is not disabled.   In particular, the Administrative Law Judge ("ALJ") followed regulations, considered and weighed the evidence of record and explained the bases for his conclusions.   Moreover, the additional evidence submitted by Turner on appeal does not merit a remand pursuant to sentence six of § 405(g) because it is not material to the relevant period of disability.   Accordingly, the court will affirm the Commissioner's decision and dismiss this case.

## SSI PROCEDURE FOR CHILDREN

A child is disabled and eligible for SSI benefits if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).  In determining disability, the Commissioner employs a three-step evaluation:  (1) whether the child is presently engaging in substantial gainful activity; (2) whether the child has an impairment or combination of impairments that is severe; and (3) whether the child has a medically determinable impairment or combination of impairments that meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, or is medically equal in severity to a listed impairment. 20 C.F.R. § 416.924(a)-(d).

A child whose impairment neither meets nor is medically equal to a listed impairment in step (3), may still be found disabled if his impairments are "functionally equal" to a listed medical impairment.  20 C.F.R. § 416.926a.  The Commissioner must assess the child's functioning in six "domains":  (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being.   § 416.926a(b).   To establish functional equivalence, the child must have "marked" limitations in at least two domains of functioning or an "extreme" limitation in one domain.   § 416.926a(a).   A "marked" limitation exists when the impairment

seriously interferes with the child's "ability to independently initiate, sustain, or complete activities."   §  416.926a(e)(2)(i).   An "extreme" limitation exists when a child's "impairment interferes very seriously with [his] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

## FACTS[1]

### I.  Background

T.L.H. was born on September 22, 2000, making her eight years old when her mother, Shakia Turner, filed an SSI application on her behalf.  In the application, Turner claimed that T.L.H. had been disabled since December 1, 2008 because of anxiety, a separation disorder, asthma, attention deficit hyperactivity disorder (ADHD), depression and a learning disorder.  (AR 11, 134, 162, 166.)  On December 18, 2008, Turner completed a function report, that indicated T.L.H. had difficulty in the following areas: communicating when upset, reading, writing, doing math, getting along with others, caring for her personal needs, paying attention and staying on task.  (AR 155–60.) Turner also claimed that T.L.H. took medication for asthma, anxiety, allergies, ADHD, and a sleep disorder, as well as attended regular therapy sessions.  (AR 186–87.)

On December 8, 2010, Turner and T.L.H. appeared *pro se* at a hearing before Administrative Law Judge (ALJ) Arthur Schneider.  (AR 45-70.)  Turner testified that she has memory loss from a Thiamine deficiency but that it would not affect her ability to

---

[1]The following facts are drawn from the administrative record (AR).

provide information because the record was in front of her.  (AR 56.)  She indicated that T.L.H. was then in fourth grade and ten years old.  (AR 53.)  Turner also stated that T.L.H. is falling behind in school but has an Independent Education Plan ("IEP") goal of being at grade level when she exits fourth grade.  (AR 59-60, 65.)

While T.L.H. reported having friends at school, Turner testified that she can be quite mean to her brother.  (AR 57-58, 60.)  Turner also testified that T.L.H. does not have proper hygiene because she will put on dirty clothing and will not wash up or brush her teeth without being reminded or given assistance, but that T.L.H. is able to ride a three-wheel bicycle, use a knife and fork and sometimes bathe herself.  (AR 60-61, 64-65.)  Turner testified that T.L.H. does not understand what her teacher tells her to do and will often lie on the floor instead of participating in classroom activities.  (AR 65.)  T.L.H. also does not "remember things."  (AR 69.)

In a written decision issued on December 17, 2010, the ALJ concluded that although T.L.H. had the severe impairments of adjustment disorder with anxiety, ADHD and learning disorder, they did not meet or medically equal any impairment listed in the regulations, including Listing 112.06 (Anxiety Disorders) and Listing 112.11 (ADHD).  (AR 14.)  Relying in part on the opinions of the state agency physicians, as well as teacher reports and T.L.H.'s individualized educational program (IEP) plan, the ALJ ultimately concluded that T.L.H. was not disabled because she had less than marked or no limitations in each of the six functional equivalence domains.  (AR 15-23.)

The Appeals Council denied Turner's request for review on February 25, 2012, making the ALJ's determination the Commissioner's final decision.  (AR 1.)

## II.  School Records

### A.  Individual Education Plan

The school psychologist initially assessed T.L.H. during her first grade year using the Kaufman Assessment Battery for Children--Second Edition, which revealed that T.L.H. had an average or above average range ability in all areas.  Between April and June 2009 (at the end of T.L.H.'s second grade year), school district personnel evaluated T.L.H. using an IEP and determined that she had a learning disability.  (AR 345–85.) T.L.H. made limited progress in literacy during the second grade and was below grade level in math.  (AR 347.)  T.L.H.'s  Kaufman Test of Educational Achievement indicated low scores in all areas, except math concepts and applications, but T.L.H.'s scores fell no more than two standard deviations below the mean.   (AR 374-75.)   Other testing indicated that she was in the average range for speech and language and had a high average IQ.  (AR 351-55.)

The IEP summary noted that T.L.H.'s ADHD medication "improved her written language skills" and helped her ability to focus and maintain attention.  (AR 346, 361). The IEP personnel determined that T.L.H. needed special education in the form of 30 to 60 minutes of small group and individualized instruction a day and an hour of psychological services a month, but that she would be outside of the regular classroom

less than twenty-one percent of the school day.  (AR 359, 367-71.)

### B.  Teacher evaluations

T.L.H.'s second grade teacher, Shannon Stetter, completed a questionnaire in March 2009.  (AR 173–80.)  She indicated that T.L.H.'s reading and writing were at a first grade level and her math was at a second grade level.  (AR 173.)  Stetter also noted that T.L.H. did not miss school; had less than serious problems in nine out of ten areas associated with the domain of acquiring and using information; slight or no problems in the domain of attending and completing tasks; and mostly slight or no problems with interacting and relating with others.  (AR 173–76).  Although Stetter noted that T.L.H. was "very sensitive" and had moods that fluctuated greatly, no behavioral modification strategies had been necessary.   (AR 176, 178.)   She also found that T.L.H. had no problems moving about and manipulating objects or taking care of personal needs and had only slight problems knowing when to ask for help and handling frustration appropriately.  (AR 177-78.)

In November 2009 and January 2010, T.L.H.'s third grade teachers also noted that T.L.H. was making progress in reading, writing, and math and was meeting either some or all of the expectations of her grade level.  (AR 214–17.)  T.L.H. also worked cooperatively with others, followed directions and completed assignments when due "most of the time."  (AR 216.)

### III.  State Agency Physicians

In October 2007, before T.L.H.'s alleged disability onset date, Lisa Webne-Behrman, Ph.D., performed a consultative examination of T.L.H., who was then in first grade.   (AR 249–53).   Turner told Dr. Webne-Behrman that T.L.H. was having problems, but acknowledged that she was not seeing a psychologist or participating in a special education program at school.  (AR 249–52).   Dr. Webne-Behrman noted that T.L.H. (1) had difficulty remaining seated and staying focused; and (2) was often angry. (AR 251.)   She diagnosed T.L.H. with adjustment disorder and assessed a Global Assessment of Functioning (GAF) score of 60.  (AR 252-53.)

In November 2007, state agency physician Cathy Propper, Ph.D., reviewed T.L.H.'s records and completed an assessment.  (AR 255–60.)  She noted that T.L.H. had less than marked or no limitations in all six functional domains, including acquiring and using information and attending and completing tasks.  (AR 257–58.)

In April 2009, Nicholas Bisenius, Ph.D. performed a psychological evaluation on T.L.H.  (AR 297–301.)  Although T.L.H. was somewhat uncooperative on the day of the examination, Bisenius noted that she was able to complete all tasks during intelligence testing and has an average IQ of 94.  He also concluded that T.L.H. had "low average" verbal comprehension, average perceptual reasoning, a good working memory and above average processing speed.   (AR 299.)   Bisenius diagnosed T.L.H. with ADHD and adjustment disorder, noting that she seemed to be under good control with her current medication regime.  (AR 301.)

State agency reviewing doctors Junko McWilliams, Ph.D., and James Walcher, M.D., opined in March and May 2009 that T.L.H. had no or less than marked limitations in all six functional domains, including acquiring and using information, attending and completing tasks, and interacting and relating with others.  In support, the doctors cited to teacher reports, medical evaluations and Turner's reports.  (AR 306–10.) Later in 2009, Cathy Propper, Ph.D., and Dr. Mary Harkness reviewed most of T.L.H.'s record, including her newly implemented IEP, and concurred that T.L.H. had no or less than marked limitations in all six functional domains.  (AR 420-25.)

On April 20, 2009, Dr. Julianne Brown performed a psychiatric intake evaluation and observed that T.L.H. (1) answered questions appropriately; (2) was nicely groomed; (3) exhibited fine mood, bright affect and clear and goal-directed thoughts; and (4) fair insight and judgment.  Dr. Brown agreed that T.L.H. had ADHD and anxiety, assigning her a GAF score of 55.  However, Brown also found that T.L.H. had showed significant improvement in her ADHD symptoms with medication.  (AR 413–16.)  She noted that T.L.H. was terminated from treatment in 2005 after Turner stopped bringing her to scheduled appointments.  Turner also did not follow through with recommended family services.  At the same time, T.L.H. *was* seen at Dane County Mental Health several times after the family obtained medical assistance.  (AR 414.)

During subsequent therapy appointments in 2009, T.L.H. appeared very relaxed with good vocabulary and excellent grooming and hygiene.  (AR 399, 404, 408-09.) T.L.H.'s anxiety and symptoms improved with medication.  (AR 391, 403-04.)  Turner

indicated during one session that T.L.H. was doing okay with focus at school and was making progress, "much better than where it had been before."  (AR 391.)  T.L.H.'s mood and sleep also had improved.  (AR 391–92.)  In June 2009, Dr. Brown wrote that T.L.H.'s ADHD was "under adequate control" and anxiety was not a major issue.  (AR 392.)

## OPINION

A federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law.  42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Where conflicting evidence allows reasonable minds to differ about whether a claimant is disabled, the responsibility for that decision falls on the [C]ommissioner, or the [C]ommissioner's designate, the ALJ."  *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (citation omitted).  Thus, a reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

In her supporting brief, Turner states without explanation that the ALJ failed "to take account of all relevant factors" and then lists T.L.H.'s most recent diagnoses and medications.  (Pltf's Br., dkt. #9.)  In her reply brief, Turner claims that T.L.H. has

regressed and generally challenges the ALJ's findings with respect to T.L.H.'s functional limitations and Turner's credibility.  (*See* Pltf's Reply Br., dkt. #15.)  In addition, Turner has filed several documents that were not before the ALJ at the time of the hearing.  Each of these matters are addressed below.

## I.  Additional Evidence

Turner has submitted several pages of additional evidence to this court.  Because this "new" evidence was not part of the record before the original ALJ and was not considered by the Appeals Council in a decision on the merits, this court cannot consider it in reviewing the ALJ's decision.  *See* 42 U.S.C. § 405(g); *Wolfe v. Shalala*, 997 F.2d 321, 322 n.3 (7th Cir. 1993); *Eads v. Secretary of Dep't of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993).   Under sentence six of § 405(g), a district court may nevertheless remand in light of additional evidence without considering the correctness of the Commissioner's decision *if*:  (1) the evidence is new and material; and (2) there is good cause for the failure to produce the evidence before the ALJ.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991).

Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).   New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered.  *Id.* (citing *Johnson v. Apfel*, 191

F.3d 770, 776 (7th Cir. 1999)).  Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review." *Id.* (citing *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).

The additional evidence submitted by Turner consists of:  (1) medical records detailing medications prescribed in 2011 and 2012; (2) laboratory test results from 2012; (3) diagnoses of dyslexia, dysmenorrhea,[2] obesity, sleep disturbance and periodic limb disorder from 2011 and 2012; and (4) T.L.H.'s 2009 and 2012 IEP plans.  (*See* dkt. #9, exhs. 3-4.)   However, none of this evidence satisfies the criteria for a remand under sentence six because it postdates the ALJ's 2010 decision and does not discuss T.L.H. retrospectively.   *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement.").  All of the medical records, laboratory tests and disorders document conditions that were diagnosed or treated in 2011 and 2012.  As for the IEPs, the ALJ already considered the 2009 IEP plan and the 2012 IEP plan was created almost two years after he issued his decision.  Finally, while Turner's claims that T.L.H. has regressed since the hearing may well be the proper subject of a later-filed application for benefits, the claims are irrelevant to the disability period at issue before the court in this case.   Accordingly, Turner has failed to

---

[2] Dysmenorrhea is painful menstruation.  *Dorland's Illus. Medical Dictionary* at 578 (32d ed.).

demonstrate a need to remand this case pursuant to sentence six of § 405(g) for consideration of the additional evidence.

## II.  ALJ Findings

In determining whether T.L.H. was disabled, the ALJ correctly applied the required three-step analysis.  Since T.L.H. had not engaged in any substantial gainful activity, the ALJ began the analysis at step two and determined her asthma and enuresis[3] were not severe.  Specifically, while the ALJ found that T.L.H. was limited by these impairments, they imposed no more than a minimal functional limitation.  In her submissions, Turner emphasizes that T.L.H. wets the bed and quits a sport after a few practices because of her asthma.  Under the Social Security Act, 42 U.S.C. § 223(d)(3), however, an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  A claimant's statements alone cannot establish an impairment. 20 C.F.R. §§ 416.908, 416.928(a).  In addition, "[t]he mere presence of some impairment [in the medical records] is not disabling per se."  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also Garmon v. Apfel*, 210 F.3d 374, at *4 (Table) (7th Cir. Mar. 22, 2000) (rejecting claimant's argument that he had severe impairment because he sought medical treatment for various symptoms).

---

[3]Enuresis refers to urinary incontinence.  *Dorland's* at 628.

As the ALJ noted in his written decision, T.L.H.'s asthma had not resulted in an acute episode, hospitalization, frequent emergency room visits or missed school. (AR 225, 233–35, 242, 263, 267–68, 274.) Her December 2008 pulmonary function studies were normal. (AR 274-75, 289.) In addition, T.L.H.'s providers noted on April 2, 2009, that she had mild intermittent asthma, and on May 6, 2009 that she had primary nocturnal enuresis and mild, infrequent wheezing. (AR 318.) Turner herself reported to T.L.H.'s treating psychiatrist, Dr. Julianne Brown, in April 2009 that (1) T.L.H. did not have any significant medical problems and (2) her asthma had not been an issue in recent years. (AR 414.) Sporadic references in T.L.H.'s medical records to asthma and enuresis do not constitute significant evidence of a disabling condition or severe impairment. *See Baker v. Astrue*, 2010 WL 538228, *5 (S.D. Ind. Feb. 8, 2010) (finding sporadic complaints of medication side effects did not evidence severe impairment or limitation).

Relying on the opinions of the state consulting physicians, the ALJ found at step three of the analysis that T.L.H.'s severe impairments did not meet or medically equal a listed impairment and their severity was not functionally equal in severity to a listed impairment. Turner neither suggests that T.L.H.'s impairments meet or are medically equivalent to a listed impairment, nor does the record appear to support such a conclusion. Rather, Turner seems to challenge the ALJ's functional equivalence determination.

After reviewing T.L.H.'s IEP, her teacher's evaluations and the opinions of the state consulting physicians, the ALJ reasonably concluded that T.L.H. had no limitations

in the functional domains of moving and manipulating objects or health and physical well-being.   Neither Turner nor any of T.L.H.'s teachers or providers indicated that T.L.H. had any significant problem in either of these areas.   At issue in this case are T.L.H.'s limitations in (a) acquiring and using information, (b) attending and completing tasks, (c) interacting and relating with others, and (d) caring for herself.   The ALJ found that T.L.H. has less than marked limitations in these areas; Turner disagrees.   As explained below, the ALJ's decision is supported by substantial evidence.

## A. Acquiring and Using Information

Acquiring and using information refers to how well a child acquires or learns information and how well she uses the information she has learned.  *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009) (citing 20 C.F.R. § 416.926a(g)).   Children between the ages of six and 12 should be able to learn to read, write and do math and discuss history and science; demonstrate this learning in an academic setting (e.g., by reading, producing oral and written projects and taking tests); and use these skills in daily living situations (e.g., reading street signs, telling time and making change).   20 C.F.R. § 416.926a(g)(2)(iv).

While Turner testified that T.L.H. was performing below her grade level and had great difficulty processing information, the ALJ correctly pointed out that T.L.H. demonstrated average or above average performance in many areas during her IEP evaluation.   Moreover, while T.L.H. was a grade level behind in reading and writing

during second grade and had some difficulties in math, her overall performance improved with medication by the end of her second grade year.  Her second grade teacher noted that she had less than serious problems in nine out of the 10 areas associated with acquiring and using information.  As the ALJ noted, testing results and teacher evaluations showed that T.L.H. has a normal IQ score, no obvious problems processing information during class and no significant speech or language problems.

### B.  Attending and Completing Tasks

Attending and completing tasks refers to how well a child is able to focus and maintain attention and how well she begins, carries through and finishes activities. *Hopgood*, 578 F.3d at 700-01 (citing 20 C.F.R. § 416.926a(h)).  School-aged children should be able to focus in a variety of situations in order to change activities and routines without distraction, follow directions, remember and organize school materials and complete classroom assignments. 20 C.F.R. § 416.926a(h)(2)(iv). They also should be able to sustain attention well enough to participate in group sports, read by themselves and complete family chores.  *Id.*

Although the ALJ acknowledged Turner's reports of T.L.H.'s difficulties with paying attention, staying on task and following through with activities, he also noted that several records showed T.L.H.'s attention issues were under adequate control, especially by 2009.  T.L.H.'s second grade teacher reported in March of 2009 that T.L.H. had slight or no problems remaining focused and completing tasks.  In October 2007,

15

Webne-Behrman indicated that T.L.H. had difficulty remaining seated and staying focused during a consultative examination, but following a later psychological examination in April 2009, Bisenius wrote that she was able to complete all tasks and was under good control with the help of her medication.  Dr. Brown also noted in 2009 that T.L.H. exhibited clear and goal-directed thoughts and that her ADHD was under adequate control.  Finally, in November 2009 and January 2010, T.L.H.'s third grade teachers indicated that she followed directions, and usually completed assignments in a timely manner.


### C.  Interacting and Relating with Others

"Interacting and relating with others refers to how well a child initiates and sustains emotional connections with others, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." *Hopgood*, 578 F.3d at 702 (citing 20 C.F.R. § 416.926a(i)).  School-aged children should be able to develop more lasting friendships, begin to understand how to work in groups, have an increasing ability to understand another's point of view and tolerate differences, and talk to people of all ages in a manner that both familiar and unfamiliar listeners readily understand.  20 C.F.R. § 416.926a(i)(2)(iv).  They also should begin to develop an understanding of right and wrong and acceptable and unacceptable behavior, demonstrate consistent control over their behavior, and avoid unsafe behaviors.  *Id.*

The ALJ noted that T.L.H. had issues with anxiety that improved with treatment. This finding is supported by Brown's treatment notes, which indicate that anxiety was not a major issue for T.L.H. as of June 2009, as well as by school records, which show that T.L.H. was behaving well in class and participating in activities outside of school.

### D. Caring for Self

Caring for self refers to how well a child gets her physical and emotional wants and needs met in appropriate ways, how she copes with stress and changes in her environment and whether she takes care of her own health, possessions and living area. 20 C.F.R. § 416.926a(k).  School-aged children should be independent in most daily activities, although they may need reminders to perform these activities routinely.  20 C.F.R. § 416.926a(k)(2)(iv).

The ALJ pointed out that treatment notes and a psychological evaluation from 2009 indicate that T.L.H. was well groomed, but Turner argues that this was because others helped T.L.H. with her personal care and hygiene.  Even if this was so, there is no evidence that T.L.H. had significant issues in the other areas related to caring for oneself.  IEP  documents note that T.L.H. had a good attitude and was coachable when experiencing problems.  (AR 355.)  T.L.H.'s second grade teacher also found no problems in this area, especially once T.L.H. was on medication.

## CONCLUSION

The ALJ's findings to be well-reasoned and supported by substantial evidence in the record. Although Turner testified that T.L.H. was continuing to have significant problems, the evidence in the record does not support such a conclusion. *No* treating physician, educator or other provider indicated that T.L.H. had marked limitations in any of the six functional domains. Apart from Turner's own self-serving, subjective complaints about T.L.H., there is no evidence that T.L.H. was having significant problems at the time of the hearing. In the absence of other reliable, contradictory evidence, the ALJ was entitled to consider the state agency consultant reports and to attribute them significant weight. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) ("ALJ may properly rely upon the opinion of these medical experts"); 20 C.F.R. § 416.927(f) ("ALJs must consider the findings of State agency medical and psychological consultants . . . as opinion evidence. . ."); SSR 96–5p (ALJ must consider state agency consulting reports as expert opinion evidence and address them in the decision). Because the court is persuaded that the ALJ built a sufficiently accurate and logical bridge from the evidence to his conclusion, it will affirm the Commissioner's decision and dismiss Turner's appeal. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

## ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED, and that plaintiff Shakia Turner's

appeal on behalf of T.L.H. Turner is DISMISSED.  The clerk of court is directed to enter

judgment in favor of defendant and close this case.

      Entered this 25th day of March, 2014.

                                       BY THE COURT:

                                       /s/
                                       _____
                                       WILLIAM M. CONLEY
                                       District Judge